# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIM. NO. 15-CR-00048 |
| | ) | |
| MEOSHI NELSON | ) | |

## UNITED STATES' RESPONSE TO NELSON'S REQUEST FOR EARLY RELEASE

The United States, by and through Richard W. Moore, the United States Attorney for the Southern District of Alabama, submits this response to Nelson's counseled motion to be released placed "under house arrest and ankle monitoring." [Doc. Nos. 286, 288.] It should be denied.

This Court sentenced Nelson to a term of imprisonment after she flagrantly violated the terms of her supervised release. In effect, Nelson's motion asks the Court to vacate that judgment and instead place her on more restrictive conditions of supervised release.

Nelson's motion is best construed as a motion for a modification of her sentence under 18 U.S.C. § 3582(c)(1)(A). Understood as such, it should be denied because Nelson has not made any attempt to carry her burden to show that she is eligible for relief. Moreover, Nelson's past disregard for this Court's orders and her new, unrelated, fraud convictions show that her current term remains fair and appropriate.

Alternatively, to the extent that Nelson's motion asks the Court to alter the manner in which she is serving her sentence rather than modify the sentence itself, her motion could be construed as arising under 28 U.S.C. § 2241. In that case, it should be denied because she has not satisfied the procedural prerequisites for filing such a motion.

## I. Background and Procedural History

### A. Nelson's Underlying Conviction and Sentence

In 2015, a grand jury charged Nelson with seven counts of access device fraud (18 U.S.C. § 1029(a)(2)) and one count of mail fraud (18 U.S.C. § 1341). [Doc. No. 1.] She pled guilty to two counts of access device fraud and to mail fraud. [Doc. No. 135 (text-only order).]

As part of her plea agreement, Nelson admitted to the underlying conduct of her offenses, which involved filing claims of lost wages due to the Deepwater Horizon oil spill, and assisting other in doing the same. [Doc. No. 133 at 11–17.]

The PSR concluded that the intended loss attributable to Nelson was $257,000. [Doc. No. 201 at 7.] Accordingly, it concluded that she has an offense level of 16, criminal history category of I, and Guidelines range of 21 to 27 months. [*Id.* at 12.] The PSR also indicated that Nelson donated one of her kidneys to her brother in 2014. [*Id.* at 10.] The PSR did not indicate whether Nelson suffered from kidney disease.

The United States moved for a downward departure of 10% based on Nelson's substantial assistance to its investigation. [Doc. No. 198.] Ultimately, the Court imposed a probation-only term of five years and to pay $122,900 in restitution. [Doc. No. 238 at 2, 4.]

Nelson's probation included the standard conditions of supervision, including that she not leave the judicial district without the permission of the court or probation officer. [*Id.* at 2.] It also included special conditions, including that she not make any major purchases, incur credit charges, or open new lines of credit without approval. [*Id.*]

In January of 2020, the Court found that Nelson had violated the terms of her release by leaving the district without permission and by violating two of the special conditions of her release. [Doc. No. 273 at 1] As a result, the Court sentenced her to 21 months in prison. [*Id.* at 2.] She is currently serving that sentence.

### B.   Nelson's New Guilty Plea

In 2019, a grand jury charged Nelson with new crimes not related to the revocation of her supervised release. [Crim. No. 19-00311.] The indictment charged with two counts of wire fraud (18 U.S.C. § 1343) and one count of conspiracy to commit wire fraud (18 U.S.C. § 1349). [*Id.*, Doc. No. 1.] The indictment alleged that, after her felony conviction in the instant case, which barred her from being a Social Security Administration representative payee, Nelson submitted two false applications to serve as a representative payee for a Social Security

3

beneficiary and that she conspired with others to carry out her scheme to defraud. [*Id.*] Nelson pled guilty to one of the wire fraud charges and the conspiracy charge. [*Id.*, Doc. No. 64 (text-only order).]

The PSR in that case concluded that Nelson received over $306,688 through her fraud. [*Id.*, Doc. No. 76 at 4.] Based on that loss amount and her criminal history, the PSR concluded that Nelson's Guidelines range in her new case is 27 to 33 months. [*Id.*, Doc. No. 76 at 11.] The United States anticipates that Nelson will dispute the loss amount at sentencing, which is currently scheduled for November 20, 2020.

### C.  Nelson's Motion

Nelson's current motion requests that she be placed "under house arrest and ankle monitoring." [Doc. Nos. 286, 288.] She questions whether the facility where she is serving her sentence has adequately responded to the threat posed by the COVID-19 pandemic. [*Id.*] Because of her age (46) and because she has one kidney, she is at increased risk for serious medical issues if she were to contract the pandemic virus. [*Id.*] She also says that she recently contracted a high fever and has been isolated from other inmates. [Doc. No. 288 at 1.]

This Court ordered the United States to respond. [Doc. No. 287.]

## II.  Analysis

Nelson's motion should be denied. To the extent that she asks that the Court modify her sentence under 18 U.S.C. § 3582(c)(1)(A), she has

not carried her burden to show that she is eligible for compassionate release consideration. Moreover, even if she were eligible, this Court should not exercise its discretion to reduce her sentence: Nelson's prior flagrant disregard for the Court's orders, and her unrelated guilty plea to additional fraud charges, show that her current sentence remains fair and appropriate.

To the extent that Nelson's motion asks the Court to alter the manner in which she is serving her sentence, her motion is not properly before the Court. Rather, to challenge the manner of service of her sentence under 28 U.S.C. § 2241, Nelson would have to exhaust her administrative remedies.

### A.   Nelson's Sentence Should Not Be Modified

Nelson's sentence should not be modified under 18 U.S.C. § 3582(c)(1)(A). First, she has not carried her burden to show that she is eligible for a modification under that section. And, even if she were eligible, this Court should not grant her motion in the exercise of its discretion.[1]

---

[1] The United States does not dispute that Nelson's motion to modify her sentence is properly before the Court. Before making a motion for compassionate release in federal court, defendants must *either* submit a request for compassionate release to the Warden of their facility and allow the agency to consider the request for 30 days, *or* "fully exhaust[ ] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A). As of the date of this response, Nelson is not in BOP custody. Accordingly,

1.   **Nelson Has Not Shown Eligibility**

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).  The defendant bears the burden to show eligibility for a modification of sentence.  18 U.S.C. § 3582(c)(1)(A); *Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *see United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("[A] defendant, as the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case.").

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).  That section also requires that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission."   18 U.S.C. § 3582(c)(1)(A).  In turn, 28 U.S.C. § 994(t) directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

---

she has no administrative rights to request that BOP make a motion on her behalf, and she has exhausted such rights. *See, United States v. Curtis*, 2020 WL 3104043 at *2 n.2 (D. Me. June 11, 2020) (collecting cases).

6

The Sentencing Commission's policy statement on "extraordinary and compelling" reasons for a sentence reduction appears at U.S.S.G. §1B1.13. In an application note, it instructs that a defendant's medical condition is an "extraordinary and compelling" reason to reduce that defendant's sentence if, as is most relevant here, they suffer from a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. §1B1.13 app. note 1. If a defendant's medical condition does not fall into a category described in the Sentencing Commission's application note, their motion must be denied.

Notably, the Sentencing Commission's policy statement and its application notes are binding on this Court. *Dillon v. United States*, 560 U.S. 817, 826 (2010) (holding that Commission's policy statements bind the Court where a statute authorizes a sentencing reduction based on a retroactive guideline amendment only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"); *United States v. Wilks*, 464 F.3d 1240, 1245 (11th Cir. 2006) (Sentencing Commission's application notes are binding unless they contradict the plain meaning of the Guidelines' text).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into the categories identified in the Sentencing Commission's application

7

note and therefore cannot alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Eberhart*, 2020 WL 1450745 at *2 (N.D. Cal. March 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").

To classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under § 3582(c)(1)(A). If an inmate has a

8

chronic medical condition that has been identified by the Centers for Disease Control and Prevention ("CDC") as elevating the inmate's risk of becoming seriously ill from COVID-19,[2] that condition may satisfy the standard of "extraordinary and compelling reasons."  Under these circumstances, a chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19.  U.S.S.G. §1B1.13, app. note 1(A)(ii)(I).  But as part of its analysis of the totality of circumstances, the Court should also consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated.  That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at his or her institution.

Here, Nelson questions whether Escambia County Jail has adequately responded to the threat posed by the COVID-19 pandemic.  [Doc. Nos. 286, 288.]  She says that she is at increased risk for severe illness if she were to be infected with the pandemic virus, and that she recently contracted a high fever and was isolated.  [Doc. Nos. 286, 288.]

---

[2] *See* Centers for Disease Control, *At Risk for Severe Illness*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated July 30, 2020).

Nelson's motion does not include any documentation for the conditions at her facility. It also contains no evidence supporting her asserted medical condition. Without an evidentiary basis for Nelson's motion, this Court is unable to review her request. On that basis alone, then, her motion should be denied.[3]

Similarly unsubstantiated is Nelson's assertion that her health condition puts her at increased risk for severe illness if she were to contract COVID-19. The CDC advises that people with "chronic kidney disease" are at increased risk during the pandemic. *See* Centers for Disease Control, *At Risk for Severe Illness*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated July 30, 2020). Nelson's PSR reports that she has a solitary kidney, but Nelson does not assert that she suffers from chronic kidney disease.

Based on the lack of evidence before the Court, Nelson's motion must be denied.

---

[3] In a case where a defendant in BOP custody files a *pro se* motion asserting a serious health condition, it has been the United States' practice to investigate the defendant's medical condition and provide the Court with medical records in BOP's possession. Nelson is not in BOP custody, which is all the more reason why, on her counseled motion, the Court should hold her to her burden.

### B.   This Court Should Not Reduce Nelson's Sentence

Even if Nelson were to demonstrate that she was eligible for a sentence reduction, this Court should not grant her motion. If an inmate carries their burden to show an extraordinary and compelling reason to warrant a sentence reduction under § 3582(c)(1)(A), this Court then considers whether the defendant would be a danger to the community and whether a balancing of the sentencing factors in 18 U.S.C. § 3553(a) weigh in favor of granting the motion. 18 U.S.C. § 3582(c)(1)(A).

Nelson's sentence should not be reduced. Nelson admitted that she submitted fraudulent claims related to the Deepwater Horizon oil spill. [Doc. No. 133 at 11–17.] For her crimes, she faced a Guidelines range of 21 to 27 months in prison. [Doc. No. 201 at 12.] Based on her substantial assistance, the United States recommended that she be sentenced to a prison term that was 10% below her Guidelines range. [Doc. No. 198.]

This Court did more than vary below the Guidelines: it generously imposed a nonincarceratory sentence and ordered that Nelson abide by standard and special terms of release. [Doc. No. 238 at 2.]

Undeterred by the Court's order, Nelson flagrantly violated the terms of her release by leaving the district without permission. [Doc. No. 273 at 1.] She is currently serving a fair and just sentence for that violation. [*Id.*]

In a further abuse of the Court's downward variance, Nelson continued to commit additional crimes. She pled guilty to wire fraud and

11

conspiracy to commit wire fraud for her false applications to the Social Security Administration. [Case No. 19-cr-00311, Doc. No. 64 (text-only order).] While the United States expects Nelson to dispute the loss amount at sentencing, the PSR concluded that Nelson's new fraud involved hundreds of thousands of dollars. [*Id.*, Doc. No. 76 at 4.]

In short, Nelson's current sentence remains fair, appropriate, and necessary to deter future crime and protect the community. 18 U.S.C. § 3553(a). Even if Nelson were eligible for a modification of that sentence, her motion should not be granted.

### C.  This Court Lacks Authority to Direct BOP to Alter the Manner of Execution of Nelson's Sentence

To the extent that Nelson asks this Court to order that she be allowed to serve her existing sentence on home confinement, her request should be denied. This Court lacks authority to issue such an order. Rather, decisions regarding the manner of execution of a defendant's sentence are committed solely to BOP's discretion.

Under 18 U.S.C. § 3621(b), BOP "shall designate the place of the prisoner's imprisonment." So, while a sentencing court "can *recommend* that the BOP place an offender in a particular facility or program," the "decisionmaking authority rests with the BOP." *Tapia v. United States*, 564 U.S. 319, 331 (2011). In other words, BOP "has exclusive authority and sole discretion to designate the place of an inmate's confinement,"

and BOP's decision is "expressly insulated from judicial review." *Austin v. Woods*, 2019 WL 2417654 at *4 (M.D. Ala. May 17, 2019).

Moreover, there is no constitutional or statutory authority that allows the Court to order home confinement under these circumstances. A prisoner has no constitutional right to confinement in any particular place, including in home confinement. *See Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers"); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons."). Following the imposition of sentence, the Court has limited jurisdiction to correct or modify that sentence absent specific circumstances enumerated by Congress in 18 U.S.C. § 3582. *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010).

The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621) did not expand this Court's authority to direct the manner in which BOP must carry out a defendant's sentence. That law empowered the BOP Director to extend the maximum amount of time for which a prisoner may be placed under home confinement under 18 U.S.C. § 3624(c)(2) under certain circumstances. *See* CARES Act, Pub. L. No. 116-136, § 12003(b)(2).

13

Nelson could attempt to challenge the manner of execution of her sentence by filing a motion under 28 U.S.C. § 2241 in her district of confinement. *See Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1351 n.1 (11th Cir. 2008). But a prospective motion under 28 U.S.C. § 2241 in her district of confinement would be properly denied on the basis that she has not exhausted his administrative remedies with respect to a request for home confinement. *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004).

### III.   Conclusion

Nelson has not carried her burden to show that she is eligible for compassionate release consideration, so her motion should be denied. And, to the extent that Nelson requests that this Court order that BOP release her to serve her sentence on home confinement, the Court lacks the authority to grant that relief.

Respectfully submitted,

RICHARD W. MOORE
UNITED STATES ATTORNEY
By:

*/s/ Oliver McDonald*
Oliver McDonald
Assistant United States Attorney
63 South Royal Street, Suite 600
Mobile, Alabama 36602
Telephone: (251) 441-5845
Fax: (251) 441-5277